(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* HAYES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FOURTH CIRCUIT

No. 07–608.   Argued November 10, 2008—Decided February 24, 2009

In 1996, Congress extended the federal Gun Control Act of 1968's pro-
hibition on possession of a firearm by convicted felons to include per-
sons convicted of "a misdemeanor crime of domestic violence," 18
U. S. C. §922(g)(9).  Responding to a 911 call reporting domestic vio-
lence, police officers discovered a rifle in respondent Hayes's home.
Based on this and other evidence, Hayes was charged under
§§922(g)(9) and 924(a)(2) with possessing firearms after having been
convicted of a misdemeanor crime of domestic violence.  The indict-
ment identified as the predicate misdemeanor offense Hayes's 1994
conviction for battery against his then-wife, in violation of West Vir-
ginia law.  Hayes moved to dismiss the indictment on the ground that
his 1994 conviction did not qualify as a predicate offense under
§922(g)(9) because West Virginia's generic battery law did not desig-
nate a domestic relationship between aggressor and victim as an
element of the offense.  When the District Court denied the motion,
Hayes entered a conditional guilty plea and appealed.  The Fourth
Circuit reversed, holding that a §922(g)(9) predicate offense must
have as an element a domestic relationship between offender and vic-
tim.

*Held:* A domestic relationship, although it must be established beyond a
  reasonable doubt in a §922(g)(9) firearms possession prosecution,
  need not be a defining element of the predicate offense. Pp. 4–13.

  (a) The definition of "misdemeanor crime of domestic violence," con-
  tained in §921(a)(33)(A), imposes two requirements.  First, the crime
  must have, "as an element, the use or attempted use of physical force,
  or the threatened use of a deadly weapon."  §921(a)(33)(A)(ii).  Sec-
  ond, it must be "committed by" a person who has a specified domestic
  relationship with the victim.  *Ibid.*  The definition does not, however,

require the predicate-offense statute to include, as an element, the existence of that domestic relationship.  Instead, it suffices for the Government to charge and prove a prior conviction that was, in fact, for "an offense . . . committed by" the defendant against a spouse or other domestic victim.  Pp. 4–9.

   (1) As an initial matter, §921(a)(33)(A)'s use of the singular word "element" suggests that Congress intended to describe only one required element, the use of force.  Had Congress also meant to make the specified relationship a predicate-offense element, it likely would have used the plural "elements," as it has done in other offense-defining provisions.  See, *e.g.,* 18 U. S. C. §3559(c)(2)(A).  Treating the specified relationship as a predicate-offense element is also awkward as a matter of syntax.  It requires the reader to regard "the use or attempted use of physical force, or the threatened use of a deadly weapon" as an expression modified by the relative clause "committed by."  It is more natural, however, to say a person "commit[s]" an "offense" than to say one "commit[s]" a "use."  Pp. 5–6.

   (2) The Fourth Circuit's textual arguments to the contrary are unpersuasive.  First, that court noted, clause (ii) is separated from clause (i)—which defines "misdemeanor"—by a line break and a semicolon, while clause (ii)'s components—force and domestic relationship—are joined in an unbroken word flow.  Such less-than-meticulous drafting hardly shows that Congress meant to exclude from §922(g)(9)'s prohibition domestic abusers convicted under generic assault or battery laws.  As structured, §921(a)(33)(A) defines "misdemeanor crime of domestic violence" by addressing in clause (i) the meaning of "misdemeanor," and in clause (ii) "crime of domestic violence."  Because a "crime of domestic violence" involves both a use of force and a domestic relationship, joining these features together in clause (ii) would make sense even if Congress had no design to confine laws qualifying under §921(a)(33)(A) to those designating as elements both use of force and domestic relationship.  A related statutory provision, 25 U. S. C. §2803(3)(C), indicates that Congress did not ascribe substantive significance to the placement of line breaks and semicolons in 18 U. S. C. §921(a)(33)(A).  Second, the Fourth Circuit relied on the "rule of the last antecedent" to read "committed by" as modifying the immediately preceding use-of-force phrase rather than the earlier word "offense."  The last-antecedent rule, however, "is not an absolute and can assuredly be overcome by other indicia of meaning."  *Barnhart* v. *Thomas*, 540 U. S. 20, 26.  Applying the rule here would require the Court to accept the unlikely premises that Congress employed the singular "element" to encompass two distinct concepts, and that it adopted the awkward construction "commi[t]" a use.  The rule, moreover, would render the

Syllabus

word "committed" superfluous, for Congress could have conveyed the same meaning by referring simply to "the use . . . of physical force . . . by a current or former spouse . . . ." Pp. 6–9.

(b) Practical considerations strongly support this Court's reading of §921(a)(33)(A). By extending the federal firearm prohibition to persons convicted of misdemeanor crimes of domestic violence, §922(g)(9)'s proponents sought to close a loophole: Existing felon-in-possession laws often failed to keep firearms out of the hands of domestic abusers, for such offenders generally were not charged with, or convicted of, felonies. Construing §922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute would frustrate Congress' manifest purpose. The statute would have been a dead letter in some two-thirds of the States because, in 1996, only about one-third of them had criminal statutes specifically proscribing *domestic* violence. Hayes argues that the measure that became §§922(g)(9) and 921(a)(33)(A), though it initially may have had a broadly remedial purpose, was revised and narrowed during the legislative process, but his argument is not corroborated by the revisions he identifies. Indeed, §922(g)(9)'s Senate sponsor observed that a domestic relationship often would not be a designated element of the predicate offense. Such remarks are "not controlling," *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 118, but the legislative record is otherwise silent. Pp. 10–12.

(c) The rule of lenity, on which Hayes also relies, applies only when a statute is ambiguous. Section 921(a)(33)(A)'s definition, though not a model of the careful drafter's art, is also not "grievous[ly] ambigu[ous]." *Huddleston* v. *United States*, 415 U. S. 814, 831. The text, context, purpose, and what little drafting history there is all point in the same direction: Congress defined "misdemeanor crime of domestic violence" to include an offense "committed by" a person who had a specified domestic relationship with the victim, whether or not the misdemeanor statute itself designates the domestic relationship as an element of the crime. Pp. 12–13.

482 F. 3d 749, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which STEVENS, KENNEDY, SOUTER, BREYER, and ALITO, JJ., joined, and in which THOMAS, J., joined as to all but Part III. ROBERTS, C. J., filed a dissenting opinion, in which SCALIA, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–608

UNITED STATES, PETITIONER *v.* RANDY EDWARD HAYES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[February 24, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.*

The federal Gun Control Act of 1968, 18 U. S. C. §921 *et seq.*, has long prohibited possession of a firearm by any person convicted of a felony. In 1996, Congress extended the prohibition to include persons convicted of "a misdemeanor crime of domestic violence." §922(g)(9). The definition of "misdemeanor crime of domestic violence," contained in §921(a)(33)(A), is at issue in this case. Does that term cover a misdemeanor battery whenever the battered victim was in fact the offender's spouse (or other relation specified in §921(a)(33)(A))? Or, to trigger the possession ban, must the predicate misdemeanor identify as an element of the crime a domestic relationship between aggressor and victim? We hold that the domestic relationship, although it must be established beyond a reasonable doubt in a §922(g)(9) firearms possession prosecution, need not be a defining element of the predicate offense.

———————

*JUSTICE THOMAS joins all but Part III of this opinion.

I

In 2004, law enforcement officers in Marion County, West Virginia, came to the home of Randy Edward Hayes in response to a 911 call reporting domestic violence. Hayes consented to a search of his home, and the officers discovered a rifle. Further investigation revealed that Hayes had recently possessed several other firearms as well. Based on this evidence, a federal grand jury returned an indictment in 2005, charging Hayes, under §§922(g)(9) and 924(a)(2), with three counts of possessing firearms after having been convicted of a misdemeanor crime of domestic violence.

The indictment identified Hayes's predicate misdemeanor crime of domestic violence as a 1994 conviction for battery in violation of West Virginia law.[1] The victim of that battery, the indictment alleged, was Hayes's then-wife—a person who "shared a child in common" with Hayes and "who was cohabitating with . . . him as a spouse." App. 3.[2]

Asserting that his 1994 West Virginia battery conviction

_____

[1] West Virginia's battery statute provides: "[A]ny person [who] unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, . . . shall be guilty of a misdemeanor." W. Va. Code Ann. §61–2–9(c) (Lexis 2005).

[2] The indictment stated, in relevant part:

"Defendant RANDY EDWARD HAYES' February 24, 1994 Battery conviction . . . constituted a misdemeanor crime of domestic violence because:

"a. Battery is a misdemeanor under State law in West Virginia;

"b. Battery has, as an element, the use and attempted use of physical force;

"c. Defendant RANDY EDWARD HAYES committed the offense of Battery against the victim:

"i. who was his current spouse; and

"ii. who was a person with whom he shared a child in common; and

"iii. who was cohabitating with and had cohabitated with him as a spouse." App. 2–3 (bold typeface deleted).

did not qualify as a predicate offense under §922(g)(9), Hayes moved to dismiss the indictment. Section 922(g)(9), Hayes maintained, applies only to persons previously convicted of an offense that has as an element a domestic relationship between aggressor and victim. The West Virginia statute under which he was convicted in 1994, Hayes observed, was a generic battery proscription, not a law designating a domestic relationship between offender and victim as an element of the offense. The United States District Court for the Northern District of West Virginia rejected Hayes's argument and denied his motion to dismiss the indictment. 377 F. Supp. 2d 540, 541–542 (2005). Hayes then entered a conditional guilty plea and appealed.

In a 2-to-1 decision, the United States Court of Appeals for the Fourth Circuit reversed. A §922(g)(9) predicate offense, the Court of Appeals held, must "have as an element a domestic relationship between the offender and the victim." 482 F. 3d 749, 751 (2007). In so ruling, the Fourth Circuit created a split between itself and the nine other Courts of Appeals that had previously published opinions deciding the same question.[3] According to those courts, §922(g)(9) does not require that the offense predicate to the defendant's firearm possession conviction have as an element a domestic relationship between offender and victim. We granted certiorari, 552 U. S. ___ (2008), to resolve this conflict.

---

[3] See *United States* v. *Heckenliable*, 446 F. 3d 1048, 1049 (CA10 2006); *United States* v. *Belless*, 338 F. 3d 1063, 1067 (CA9 2003); *White* v. *Department of Justice*, 328 F. 3d 1361, 1364–1367 (CA Fed. 2003); *United States* v. *Shelton*, 325 F. 3d 553, 562 (CA5 2003); *United States* v. *Kavoukian*, 315 F. 3d 139, 142–144 (CA2 2002); *United States* v. *Barnes*, 295 F. 3d 1354, 1358–1361 (CADC 2002); *United States* v. *Chavez*, 204 F. 3d 1305, 1313–1314 (CA11 2000); *United States* v. *Meade*, 175 F. 3d 215, 218–221 (CA1 1999); *United States* v. *Smith*, 171 F. 3d 617, 619–621 (CA8 1999).

## II

Section 922(g)(9) makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition." Section 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as follows:

"[T]he term 'misdemeanor crime of domestic violence' means an offense that—

"(i) is a misdemeanor under Federal, State, or Tribal law; and

"(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim" (footnotes omitted).

This definition, all agree, imposes two requirements: First, a "misdemeanor crime of domestic violence" must have, "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." Second, it must be "committed by" a person who has a specified domestic relationship with the victim. The question here is whether the language of §921(a)(33)(A) calls for a further limitation: Must the statute describing the predicate offense include, as a discrete element, the existence of a domestic relationship between offender and victim? In line with the large majority of the Courts of Appeals, we conclude that §921(a)(33)(A) does not require a predicate-offense statute of that specificity. Instead, in a §922(g)(9) prosecution, it suffices for the Government to charge and prove a prior conviction that was, in fact, for "an offense

. . . committed by" the defendant against a spouse or other domestic victim.

We note as an initial matter that §921(a)(33)(A) uses the word "element" in the singular, which suggests that Congress intended to describe only one required element. Immediately following the word "element," §921(a)(33)(A)(ii) refers to the use of force (undoubtedly a required element) and thereafter to the relationship between aggressor and victim, *e.g.*, a current or former spouse. The manner in which the offender acts, and the offender's relationship with the victim, are "conceptually distinct attributes." *United States* v. *Meade*, 175 F. 3d 215, 218 (CA1 1999).[4] Had Congress meant to make the latter as well as the former an element of the predicate offense, it likely would have used the plural "elements," as it has done in other offense-defining provisions. See, *e.g.,* 18 U. S. C. §3559(c)(2)(A) ("[T]he term 'assault with intent to commit rape' means an offense that has as its elements engaging in physical contact with another person or using or brandishing a weapon against another person with intent to commit aggravated sexual abuse or sexual abuse."). Cf. Black's Law Dictionary 559 (8th ed. 2004) (defining "element" as "[a] constituent part of a claim that must be proved for the claim to succeed <Burke failed to prove the element of proximate cause in prosecuting his

———————

[4] Hayes observes, see Brief for Respondent 24–25, that Congress has used the singular "element" in defining a "crime of violence" to require both an action (the use of force) and its object (the person of another). See, *e.g.,* 18 U. S. C. §16(a) (defining "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). Although one might conceive of an action and its object as separate elements, it is unsurprising that Congress would have chosen to denominate "the use of force against another" as a single, undifferentiated element. In contrast, the two requirements set out in §921(a)(33)(A)(ii)—the use of force and the existence of a specified relationship between aggressor and victim—are not readily conceptualized as a single element.

negligence claim>").[5]

Treating the relationship between aggressor and victim as an element of the predicate offense is also awkward as a matter of syntax. It requires the reader to regard "the use or attempted use of physical force, or the threatened use of a deadly weapon" as an expression modified by the relative clause "committed by." In ordinary usage, however, we would not say that a person "commit[s]" a "use." It is more natural to say that a person "commit[s]" an "offense." See, *e.g.*, *United States* v. *Belless*, 338 F. 3d 1063, 1066 (CA9 2003) ("One can 'commit' a crime or an offense, but one does not 'commit' 'force' or 'use.'").

In reaching the conclusion that §921(a)(33)(A) renders both the use of force and a domestic relationship between aggressor and victim necessary elements of a qualifying predicate offense, the Fourth Circuit majority relied on two textual arguments. First, the court noted that clause (ii) is separated from clause (i) by a line break and a semi-colon; in contrast, the components of clause (ii)—force and domestic relationship—are joined in an unbroken word flow. See 482 F. 3d, at 753.

Had Congress placed the "committed by" phrase in its own clause, set off from clause (ii) by a semicolon or a line break, the lawmakers might have better conveyed that "committed by" modifies only "offense" and not "use" or "element." Congress' less-than-meticulous drafting, however, hardly shows that the legislators meant to exclude

––––––––––

[5] Invoking the Dictionary Act, Hayes contends that the singular "element" encompasses the plural "elements." See Brief for Respondent 25. The Dictionary Act provides that, "unless the context indicates otherwise," "words importing the singular include and apply to several persons, parties, or things." 1 U. S. C. §1. On the rare occasions when we have relied on this rule, doing so was "necessary to carry out the evident intent of the statute." *First Nat. Bank in St. Louis* v. *Missouri*, 263 U. S. 640, 657 (1924). As we explain *infra*, at 10–12, Hayes's reading of 18 U. S. C. §921(a)(33)(A) does not accord with Congress' aim in extending the gun possession ban.

from §922(g)(9)'s firearm possession prohibition domestic abusers convicted under generic assault or battery provisions.

As structured, §921(a)(33)(A) defines "misdemeanor crime of domestic violence" by addressing in clause (i) the meaning of "misdemeanor" and, in turn, in clause (ii), "crime of domestic violence." Because a "crime of domestic violence" involves both a use of force and a domestic relationship, joining these features together in clause (ii) would make sense even if Congress had no design to confine laws qualifying under §921(a)(33)(A) to those designating as elements both use of force and domestic relationship between aggressor and victim. See *id.*, at 761 (Williams, J., dissenting). See also *United States* v. *Barnes*, 295 F. 3d 1354, 1358–1360, 1361 (CADC 2002) ("The fact that the Congress somewhat awkwardly included the 'committed by' phrase in subpart (ii) (instead of adding a subpart (iii)) is not significant in view of the *un*natural reading that would result if 'committed by' were construed to modify 'use of force.' ").

A related statutory provision, 25 U. S. C. §2803(3)(C), indicates that Congress did not ascribe substantive significance to the placement of line breaks and semicolons in 18 U. S. C. §921(a)(33)(A). In 2006, Congress amended §921(a)(33)(A)(i) to include misdemeanors under "[t]ribal law" as predicate offenses. As a companion measure, Congress simultaneously enacted §2803(3)(C), which employs use-of-force and domestic-relationship language virtually identical to the language earlier placed in §921(a)(33)(A)(i), except that §2803(3)(C) uses no semicolon or line break.

Section 2803(3)(C) authorizes federal agents to "make an arrest without a warrant for an offense committed in Indian country if—"

"the offense is a misdemeanor crime of domestic violence . . . and has, as an element, the use or attempted

use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim . . . ."

At the time Congress enacted §2803(3)(C), the Courts of Appeals uniformly agreed that §921(a)(33)(A) did not limit predicate offenses to statutory texts specifying both a use of force and a domestic relationship as offense elements. Congress presumably knew how §921(a)(33)(A) had been construed, and presumably intended §2803(3)(C) to bear the same meaning. See *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U. S. 71, 85–86 (2006) ("[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" (quoting *Bragdon* v. *Abbott*, 524 U. S. 624, 645 (1998))). Relying on spacing and punctuation to hem in §921(a)(33)(A), while reading §2803(3)(C) to contain no similar limitation, would create a disjunction between these two provisions that Congress could not have intended.

As a second justification for its construction of §921(a)(33)(A), the Court of Appeals invoked the "rule of the last antecedent," under which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart* v. *Thomas*, 540 U. S. 20, 26 (2003). The words "committed by" immediately follow the use-of-force language, the court observed, and therefore should be read to modify that phrase, not the earlier word "offense." See 482 F. 3d, at

753–755. The rule of the last antecedent, however, "is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U. S., at 26.[6]

Applying the rule of the last antecedent here would require us to accept two unlikely premises: that Congress employed the singular "element" to encompass two distinct concepts, and that it adopted the awkward construction "commi[t]" a "use." See *supra*, at 5–6. Moreover, as the dissent acknowledges, *post*, at 4, the last-antecedent rule would render the word "committed" superfluous: Congress could have conveyed the same meaning by referring simply to "the use . . . of physical force . . . by a current or former spouse . . . ." See Tr. of Oral Arg. 29. "Committed" retains its operative meaning only if it is read to modify "offense."

Most sensibly read, then, §921(a)(33)(A) defines "misdemeanor crime of domestic violence" as a misdemeanor offense that (1) "has, as an element, the use [of force]," and (2) is committed by a person who has a specified domestic relationship with the victim. To obtain a conviction in a §922(g)(9) prosecution, the Government must prove beyond a reasonable doubt that the victim of the predicate offense was the defendant's current or former spouse or was related to the defendant in another specified way. But that relationship, while it must be established, need not be denominated an element of the predicate offense.[7]

---

[6] As the United States points out, the Court of Appeals "itself recognized the flexibility of the rule [of the last antecedent]." Brief for United States 20, n. 7. Under a strict application of the rule, the "committed by" phrase would modify only its immediate antecedent, *i.e.*, "the threatened use of a deadly weapon," and not the entire phrase "use or attempted use of physical force, or the threatened use of a deadly weapon." The court rightly regarded such a reading as implausible. See 482 F. 3d 749, 755 (CA4 2007).

[7] We find it not at all "surprising"—indeed, it seems to us "most natural"—to read §921(a)(33)(A) to convey that a person convicted of battering a spouse or other domestic victim has committed a "crime of domes-

### III

Practical considerations strongly support our reading of §921(a)(33)(A)'s language. Existing felon-in-possession laws, Congress recognized, were not keeping firearms out of the hands of domestic abusers, because "many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies." 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg). By extending the federal firearm prohibition to persons convicted of "misdemeanor crime[s] of domestic violence," proponents of §922(g)(9) sought to "close this dangerous loophole." *Id.*, at 22986.

Construing §922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose. Firearms and domestic strife are a potentially deadly combination nationwide. See, *e.g.*, Brief for Brady Center to Prevent Gun Violence et al. as *Amici Curiae* 8–15; Brief for National Network to End Domestic Violence et al. as *Amici Curiae* 2–8. Yet, as interpreted by the Fourth Circuit, §922(g)(9) would have been "a dead letter" in some two-thirds of the States from the very moment of its enactment. 482 F. 3d, at 762 (Williams, J., dissenting).

As of 1996, only about one-third of the States had criminal statutes that specifically proscribed *domestic* violence. See Brief for United States 23, n. 8.[8] Even in those States, domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws. See Tr. of Oral Arg. 19. And no statute defining a distinct

─────────

tic violence," whether or not the statute of conviction happens to contain a domestic-relationship element. Cf. *post*, at 2.

[8] Additional States have enacted such statutes since 1996, but about one-half of the States still prosecute domestic violence exclusively under generally applicable criminal laws. See Brief for United States 23–24, and n. 9.

federal misdemeanor designated as an element of the offense a domestic relationship between aggressor and victim. Yet Congress defined "misdemeanor crime of domestic violence" to include "misdemeanor[s] under Federal . . . law." §921(a)(33)(A)(i). Given the paucity of state and federal statutes targeting *domestic* violence, we find it highly improbable that Congress meant to extend §922(g)(9)'s firearm possession ban only to the relatively few domestic abusers prosecuted under laws rendering a domestic relationship an element of the offense. See *Barnes*, 295 F. 3d, at 1364 (rejecting the view that "Congress remedied one disparity—between felony and misdemeanor domestic violence convictions—while at the same time creating a new disparity among (and sometimes, within) states").[9]

The measure that became §922(g)(9) and §921(a)(33)(A), Hayes acknowledges, initially may have had a broadly remedial purpose, see Brief for Respondent 28–29, but the text of the proposal, he maintains, was revised and narrowed while the measure remained in the congressional hopper. The compromise reflected in the text that gained passage, Hayes argues, restricted the legislation to offenses specifically denominating a domestic relationship as a defining element. The changes Hayes identifies, however, do not corroborate his argument.

Congress did revise the language of §921(a)(33)(A) to spell out the use-of-force requirement. The proposed legislation initially described the predicate domestic-violence offense as a "crime of violence . . . committed by" a person who had a domestic relationship with the victim. 142 Cong. Rec. 5840. The final version replaced the un-

--------

[9] Generally, as in this case, it would entail no "'elaborate factfinding process,'" cf. *post*, at 7, to determine whether the victim of a violent assault was the perpetrator's "current or former spouse" or bore one of the other domestic relationships specified in §921(a)(33)(A)(ii) to the perpetrator.

elaborated phrase "crime of violence" with the phrase "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." This apparently last-minute insertion may help to explain some of the syntactical awkwardness of the enacted language, but it does not evince an intention to convert the "committed by" phrase into a required element of the predicate offense.

Indeed, in a floor statement discussing the revised version of §922(g)(9), Senator Frank Lautenberg, the sponsor of the provision, observed that a domestic relationship between aggressor and victim often would not be a designated element of the predicate offense:

> "[C]onvictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence. Therefore, it will not always be possible for law enforcement authorities to determine from the face of someone's criminal record whether a particular misdemeanor conviction involves domestic violence, as defined in the new law." *Id.*, at 26675.

The remarks of a single Senator are "not controlling," *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 118 (1980), but, as Hayes recognizes, the legislative record is otherwise "absolutely silent." See Tr. of Oral Arg. 32, 35. It contains no suggestion that Congress intended to confine §922(g)(9) to abusers who had violated statutes rendering the domestic relationship between aggressor and victim an element of the offense.

## IV

The rule of lenity, Hayes contends, provides an additional reason to construe §922(g)(9) and §921(a)(33)(A) to apply only to predicate offenses that specify a domestic relationship as an element of the crime. "[T]he touchstone

of the rule of lenity is statutory ambiguity." *Bifulco* v. *United States*, 447 U. S. 381, 387 (1980) (internal quotation marks omitted). We apply the rule "only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States* v. *Shabani*, 513 U. S. 10, 17 (1994). Section 921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence," we acknowledge, is not a model of the careful drafter's art. See *Barnes*, 295 F. 3d, at 1356. But neither is it "grievous[ly] ambigu[ous]." *Huddleston* v. *United States*, 415 U. S. 814, 831 (1974). The text, context, purpose, and what little there is of drafting history all point in the same direction: Congress defined "misdemeanor crime of domestic violence" to include an offense "committed by" a person who had a specified domestic relationship with the victim, whether or not the misdemeanor statute itself designates the domestic relationship as an element of the crime.

\*   \*   \*

For the reasons stated, the judgment of the United States Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–608

———————

## UNITED STATES, PETITIONER *v.* RANDY EDWARD HAYES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[February 24, 2009]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA joins, dissenting.

A person convicted of a "misdemeanor crime of domestic violence" is prohibited from possessing a firearm. 18 U. S. C. §922(g)(9). The question before the Court is whether the definition of "misdemeanor crime of domestic violence" in §921(a)(33)(A) includes misdemeanor offenses with no domestic-relationship element.

Section 921(a)(33)(A) provides:

> "[T]he term 'misdemeanor crime of domestic violence' means an offense that—
>
> "(i) is a misdemeanor under Federal, State, or Tribal law; and
>
> "(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." (Footnote omitted.)

The majority would read the "committed by" phrase in clause (ii) to modify the word "offense" in the opening

clause of subparagraph (A), leapfrogging the word "element" at the outset of clause (ii). That reading does not require the specified domestic relationship in clause (ii) to be an element of the predicate misdemeanor statute. Individuals convicted under generic use-of-force statutes containing no reference to domestic violence would therefore be subject to prosecution under §922(g)(9).

The Court of Appeals held to the contrary that "committed by" modifies the immediately preceding phrase: "the use or attempted use of physical force, or the threatened use of a deadly weapon." §921(a)(33)(A); 482 F. 3d 749, 753–754 (CA4 2007). Read that way, a domestic relationship is an element of the prior offense.

That seems to be the most natural reading right off the bat. The term at issue is "misdemeanor crime of domestic violence." That is a defined term—so the definition certainly must be parsed—but it would be at least surprising to find from that parsing that a "misdemeanor crime of domestic violence" need not by its terms have anything to do with domestic violence.

1. The grammatical rule of the last antecedent indicates that the domestic relationship is a required element of the predicate offense. That rule instructs that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart* v. *Thomas*, 540 U. S. 20, 26 (2003). Pursuant to that rule, the "committed by" phrase in clause (ii) is best read to modify the preceding phrase "the use or attempted use of physical force, or the threatened use of a deadly weapon." See 482 F. 3d, at 754–755. By not following the usual grammatical rule, the majority's reading requires jumping over two line breaks, clause (i), a semicolon, and the first portion of clause (ii) to reach the more distant antecedent ("offense"). Due to the floating "that" after "offense," if "committed by" modified "offense" the text would read "offense that committed by."

The majority counters that people do not ordinarily say someone "commit[s]" a "use" of force. See *ante*, at 6. True enough, but only because "use" of force is a term that encompasses a variety of conduct, which if listed separately would not pose the objection the majority raises (*e.g.,* commits a battery, robbery, or kidnaping). There is no reason to believe that the reasonable drafting decision to insert "use" of force rather than coming up with a laundry list of offenses was meant to alter the meaning of the statute.

The majority also relies on Congress's use of the word "element" in the singular. From that, the majority infers that Congress intended to describe only one required element—the use of force. *Ante*, at 5. In its view, Congress would have used the plural "elements" if it meant to encompass both the use of force and the offender's relationship with the victim. *Ibid.*

That argument is contrary to the Dictionary Act, which specifies that unless the context indicates otherwise, "words importing the singular include and apply to several persons, parties, or things." 1 U. S. C. §1; see *Rowland* v. *California Men's Colony, Unit II Men's Advisory Council*, 506 U. S. 194, 200 (1993). More significantly, reading "element" as limited to the singular does not resolve what that element is. See *United States* v. *Barnes*, 295 F. 3d 1354, 1369 (CADC 2002) (Sentelle, J., dissenting). A single element often contains multiple components. In the very provision at issue, the "threatened use of a deadly weapon" includes three concepts: (1) the threatened use (2) of a weapon (3) that is deadly.

In other statutes, Congress has used the word "element" in the singular to refer to the use of force and its object. See, *e.g.,* 18 U. S. C. §16(a) (defining "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). The majority finds it "unsurprising"

that Congress would have chosen to combine the mode of aggression and its object in a "single, undifferentiated element." *Ante*, at 5, n. 4. It asserts, however, that Congress would not have so joined the use of force and the offender's relationship with the victim, because those requirements "are not readily conceptualized as a single element." *Ibid.* That distinction is elusive; both 18 U. S. C. §16(a) and the provision at issue here contain as distinct components the act (use of force) and the target (person or property in the former case, domestic relationship victim in the latter).

The majority also points out that interpreting "committed by" to modify the "use" of force would render the word "committed" superfluous. That may be so, but as shown, reading "committed by" to modify "offense" has its own flaws. All this goes to show that the statute is not an example of elegant syntax under either reading. The majority properly acknowledges that, under its view, the statutory language reflects "less-than-meticulous drafting" and "syntactical awkwardness," and "is not a model of the careful drafter's art." *Ante,* at 6, 12, 13. I am willing to acknowledge the same with respect to my reading. But I conclude from such reciprocal shortcomings that the text is at least ambiguous.

2. That brings us to the structure of the statute. The most natural reading of the statute, as it is laid out, is that the underlying misdemeanor must have as an element the use of force committed by a person in a domestic relationship with the victim. The definition of "misdemeanor crime of domestic violence" is twice qualified: first, by the relative clause "is a misdemeanor under Federal, State, or Tribal law"; and second by the relative clause "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by [a person in a specified domestic relationship with the victim]." §921(a)(33)(A) (footnote omitted). The fact that

Congress included the domestic relationship language in the clause of the statute designating the element of the predicate offense strongly suggests that it is in fact part of the required element.

The majority's contrary reading requires restructuring the statute and adding words. The majority first must place the "committed by" phrase in its own clause—set off by a line break, a semicolon, or "(iii)"—to indicate that "committed by" refers all the way back to "offense." And, as noted, because the word "that" appears at the end of subparagraph (A), the statute would then read "an offense that committed by." To arrive at its reading, the majority must ignore the floating "that" or add "and is" before "committed by."

The Government would define "misdemeanor crime of domestic violence" as "an offense, committed by a person with a domestic relationship with the victim, that is a misdemeanor and has, as an element, the use or at- tempted use of physical force, or the threatened use of a deadly weapon." Brief for United States 13; see also Tr. of Oral Arg. 8–9. That reading also requires rearranging the statute. The "committed by" phrase would have to be severed from clause (ii) and moved up to appear after the word "offense" in subparagraph (A). Changing and rear- ranging the wording as the Government does to explain what the actual words mean is, in any event, not a compel- ling line of argument.

The majority attempts to diminish the magnitude of these alterations by stating that the lawmakers might have better conveyed their intent by setting off the "com- mitted by" phrase with "a semicolon" or "a line break." *Ante*, at 6. But those are not insignificant revisions; they alter the structure of the statute, and we have recognized that structure is often critical in resolving verbal ambigu- ity. See *Castillo* v. *United States*, 530 U. S. 120, 124 (2000) ("The statute's structure clarifies any ambiguity

inherent in its literal language"). I therefore respectfully disagree with the majority that "misdemeanor crime of domestic violence" is most sensibly read as including misdemeanor offenses without a domestic-relationship element.

3. Moving beyond text and structure, the majority recognizes that there is "little . . . drafting history," *ante*, at 13, but gamely trots out what there is: a statement on the floor of the Senate by the bill's sponsor, see *ante*, at 12. Such tidbits do not amount to much. See *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 118 (1980). This is especially true here where the statement was delivered the day the legislation was passed and *after* the House of Representatives had passed the pertinent provision. See *Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U. S. 546, 568 (2005); see also Brief for Respondent 33. The majority nonetheless looks to the floor statement because "the legislative record is otherwise 'absolutely silent.'" *Ante*, at 12. But that is no reason to accord the statement significance: We dismiss the value of such statements due to their inherent flaws as guides to legislative intent, flaws that persist (and indeed may be amplified) in the absence of other indicia of intent.

The majority also finds it "highly improbable that Congress meant to extend §922(g)(9)'s firearm possession ban only to the relatively few domestic abusers prosecuted under laws rendering a domestic relationship an element of the offense." *Ante*, at 11. In its view, construing §922(g)(9) to exclude persons convicted under a generic use-of-force statute would "frustrate Congress' manifest purpose," *ante,* at 10, of keeping guns out of the hands of domestic abusers. See *ante,* at 10 (quoting statement of Sen. Lautenberg, 142 Cong. Rec. 22985 (1996)).

Invoking the *sponsor's* objective as *Congress's* manifest purpose, however, "ignores the complexity of the problems Congress is called upon to address and the dynamics of

legislative action." *Board of Governors, FRS* v. *Dimension Financial Corp.*, 474 U. S. 361, 373–374 (1986). Legislative enactments are the result of negotiations between competing interests; "the final language of the legislation may reflect hard-fought compromises." *Id.*, at 374. Even if there were sufficient sentiment to extend the gun ban, individual legislators might have disagreed on the appropriate reach of the new provision. See *ibid.* Some members might well have been willing to extend the ban beyond individuals convicted of felonies, but only if the predicate misdemeanor by its terms was addressed to domestic violence.

4. The majority's approach will entail significant problems in application. Under the interpretation adopted by the court below, it is easy to determine whether an individual is covered by the gun ban: Simply look to the record of the prior conviction. Under the majority's approach, on the other hand, it will often be necessary to go beyond the fact of conviction and "engage in an elaborate factfinding process regarding the defendant's prior offens[e]," *Taylor* v. *United States*, 495 U. S. 575, 601 (1990), to determine whether it happened to involve domestic violence.

That is one reason we adopted a categorical approach to predicate offenses under the Armed Career Criminal Act, 18 U. S. C. §924(e)(1), "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor, supra*, at 600; see *Shepard* v. *United States*, 544 U. S. 13, 19 (2005) (Court considered "predicate offens[e] in terms not of prior conduct but of prior 'convictions' and the 'element[s]' of crimes"). As we warned in *Taylor* and reaffirmed in *Shepard*, "the practical difficulties and potential unfairness of a factual approach are daunting." *Taylor, supra*, at 601; see *Shepard, supra*, at 20. Those same concerns are implicated here, given that the majority would require juries and courts to look at the particular facts of a prior

conviction to determine whether it happened to involve domestic violence, rather than simply looking to the elements of the predicate offense. See *ante*, at 4-5.

5. Taking a fair view, the text of §921(a)(33)(A) is ambiguous, the structure leans in the defendant's favor, the purpose leans in the Government's favor, and the legislative history does not amount to much. This is a textbook case for application of the rule of lenity.

"Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text." *Crandon* v. *United States*, 494 U. S. 152, 160 (1990). It cannot fairly be said here that the text "clearly warrants" the counterintuitive conclusion that a "crime of domestic violence" need not have domestic violence as an element. That leaves the majority's arguments about legislative history and statutory purpose. This is not the "rare" case in which such grounds provide "fair warning," especially given that there is nothing wrong with the conduct punished—possessing a firearm—if the prior misdemeanor is not covered by the statute.

If the rule of lenity means anything, it is that an individual should not go to jail for failing to conduct a 50-state survey or comb through obscure legislative history. Ten years in jail is too much to hinge on the will-o'-the-wisp of statutory meaning pursued by the majority.